IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN MCCROREY | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA, et al. | : | NO. 22-2360 |

MEMORANDUM

Bartle, J.                                          January 27, 2025

Plaintiff John McCrorey brings federal and state claims against the City of Philadelphia ("City") and Philadelphia Police Officers Michael Spicer and John Speiser.[1] The complaint also contains a supplemental state law claim of malicious prosecution.

McCrorey alleges pursuant to 42 U.S.C. § 1983 that Officer Spicer engaged in a malicious prosecution against him in violation of his Fourth Amendment rights (Count I) and fabricated evidence against him in violation of his Fourteenth Amendment procedural due process right (Count III). He similarly avers that Officer Spicer and Officer Speiser engaged in a conspiracy to maliciously prosecute him in violation of his Fourth Amendment rights (Count II) and to fabricate evidence against him in violation of his Fourteenth Amendment procedural

_____

1.  Plaintiff also brought claims against Philadelphia Police Sergeant Joseph McCloskey and Officer Thomas Liciardello.  By agreement, the action was dismissed as to those two defendants on January 15, 2025 (Doc. # 71).

due process right (Count IV).  Count V asserts a § 1983 claim that the City has policies, practices, or customs that result in a deprivation of rights so as to be liable for plaintiff's injuries.  Finally, Count VI sets forth the state law claim for malicious prosecution against all defendants.

Before the court are two motions.  The first is the motion of defendants Spicer and Speiser for summary judgment as to the claims against them (Doc. # 52).  The second is that of defendant City for summary judgment (Doc. # 55).

I

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a);  see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A dispute is genuine if the evidence is such that a reasonable factfinder could return a verdict for the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986).  The court views the facts and draws all inferences in favor of the nonmoving party.  See In re Flat Glass Antitrust Litig., 385 F.3d 350, 357 (3d Cir. 2004).

Summary judgment is granted when there is insufficient evidence in the record for a reasonable factfinder to find for the nonmovant.  See Anderson, 477 U.S. at 252.  "The mere

-2-

existence of a scintilla of evidence in support of the
[nonmoving party]'s position will be insufficient; there must be
evidence on which the jury could reasonably find for [that
party]."  Id.  In addition, Rule 56(e)(2) provides that "[i]f a
party fails to properly support an assertion of fact or fails to
properly address another party's assertion of fact as required
by Rule 56(c), the court may . . . consider the fact undisputed
for the purposes of the motion."  Fed. R. Civ. P. 56(e)(2).

II

The following facts are either undisputed or
considered in the light most favorable to plaintiff McCrorey,
the non-moving party.

Defendant Officer Spicer and Officer Charles
Kapusniak, a non-party, had information from two purportedly
reliable sources that a white man known as John, who lived at
12775 Dunks Ferry Road, Philadelphia, was selling narcotics.

John McCrorey lived at that address with his
girlfriend, Alicia Carpenter, and their two sons.  He matched
the informants' description.  Both he and Carpenter used heroin
and she also took Xanax.  The drugs, with the exception of the
Xanax, which Carpenter stored separately, were kept in a small
safe in the house.  At the time in issue, McCrorey was also in
possession of a 40-caliber Smith & Wesson handgun, which he had
placed in the safe and for which he did not have a license.

-3-

According to McCrorey, the gun belonged to a friend of his who had left it at McCrorey's home.

On October 12, 2011, McCrorey had hired Angel Velez and several others to renovate McCrorey's bedroom.  That morning, McCrorey and Carpenter, who was high on drugs, had one of their frequent arguments.  As a result, McCrorey left the house.  He took their younger son with him and dropped him off at his parents' home in the Juniata section of Philadelphia.  Upon returning, he and Carpenter continued to quarrel.  Thereafter, he left again, picked up his older son at school, and drove the boy to his parents' home.

McCrorey did not feel comfortable leaving a firearm and drugs in the house with his girlfriend.  Before leaving for the second time that day, he gave Velez the combination to his safe and asked Velez to remove the gun, drugs, and prescriptions from the safe and bring these items to him.

In his deposition, McCrorey first testified that the two men exchanged these items in front of his house on Dunks Ferry Road.  He described Velez as carrying the drugs in a white box and the gun in his pocket.  Later in his deposition, however, he stated that he could not recall whether he and Velez exchanged the items in front of his house or at a nearby Wawa.

According to McCrorey, after Velez gave him the drugs and gun, Velez called McCrorey to tell him that he had neglected

-4-

to pay him for the renovations to McCrorey's bedroom.  The two
men met at the Wawa where McCrorey intended to make payment.
The police report[2] stated that on or about 4:10 p.m. on October
12, 2011, Officer Spicer witnessed Velez enter McCrorey's car
carrying a "white object" and accept U.S. currency from
plaintiff.  McCrorey testified that while it was a "possibility"
that Velez carried a white object into McCrorey's car at the
Wawa, he did not recall Velez doing so.

McCrorey acknowledged at his deposition that Velez
entered his vehicle.  At that point, McCrorey pulled money out
of his pocket and began to count it.  Police then surrounded
McCrorey's vehicle and pulled him out of the car.

The police report stated that upon the approach of the
police, McCrorey "immediately placed his hand between the seats
of the vehicle."  McCrorey countered in his deposition that he
did not do so, because "as an officer [he] would never move
[his] hands and make [an arresting officer] feel uncomfortable."[3]
McCrorey did not recall whether Officer Speiser or Officer
Spicer arrested him.

---

2.   The police report was completed by Officer Spicer and
approved by Sergeant McCloskey.  It listed as witnesses Officer
Spicer, Officer Charles Kapusniak, Officer Speiser, and Officer
Reynolds.

3.   Plaintiff was a Philadelphia police officer from
approximately 2000 through 2003 and left the department after an
injury he sustained in connection with a motor vehicle accident.

The police report recounted that one pill of
methadose, several blank prescriptions, two prescriptions for
John McCrorey for oxycodone pills, and $2,725 in cash were
recovered from McCrorey's car.  McCrorey confirmed that these
items were all found in his car but testified that he had
$3,725, not $2,725, in his possession at the time of his arrest.
He added that he witnessed Officer Spieser pick up some of the
money he dropped during his arrest and put it into his own
pocket.

The police report further recorded that McCrorey, upon
his arrest, admitted to the officers that he sold drugs but was
not selling drugs to Velez.  At his deposition, McCrorey denied
that he ever made this comment to the police.  Rather, he
informed them that he did not sell drugs and that instead the
drugs were for "personal use" due to a "drug problem."

McCrorey and Velez were placed in separate police
vehicles and driven to McCrorey's home on Dunks Ferry Road.
Officer Liciardello drove the police vehicle in which McCrorey
rode.  Officer Reynolds sat in the passenger seat while Officer
Spieser rode in the back with McCrorey.  Approximately twenty
minutes after McCrorey arrived at his home, police arrived with
his vehicle.

Upon obtaining search warrants on or about 9:00 p.m.
that evening, which were requested by Officer Spicer, police

-6-

searched McCrorey's vehicle once more and then his residence.
From McCrorey's vehicle, the police then recovered an amber pill
bottle containing 85 methadose pills, seven bars of Xanax, 50
pieces of Xanax pills, seven blank prescriptions, two filled-out
prescriptions, and a 40-caliber Smith & Wesson handgun.
McCrorey stated at his deposition that he would not have had
Xanax in his car and that Velez did not bring him Xanax along
with the other items prior to his arrest.  During the search of
his home, the police report noted that two jars of Trenabol, a
steroid, and seventeen doses of human growth hormone were found.
McCrorey conceded that he had these at his residence.  Shortly
after this search, McCrorey was transported to the Fifteenth
District where he was held for twelve hours before he attended a
hearing and was released on bail.

        The docket in the Court of Common Pleas of
Philadelphia County reflected that McCrorey was charged with
several offenses, including possession with intent to deliver
controlled substances, knowing and intentional possession of
controlled substances, illegal possession or use of firearms,
simple assault, and reckless endangerment.  He pleaded guilty to
possession with intent to deliver before Judge Jeffrey P.
Minehart in October 2012 and was sentenced to one and one-half
to three years of incarceration.  The remaining charges were
dropped.  During these proceedings, he was represented by

attorney Brian J. McMonagle.  McCrorey served fourteen months at
the State Correctional Institution at Graterford and was
released into a nine-month program for nonviolent criminals at
Quehanna Boot Camp in Karthaus, Pennsylvania.

McCrorey notes in his statement of facts filed with
his response in opposition to defendants' motions for summary
judgment that on December 3, 2012, the Philadelphia District
Attorney sent a letter to the Philadelphia Police Commissioner
stating that his office would no longer use the testimony of
certain narcotics officers, accept charges, or approve search
warrants in cases in which they participated.  Those officers
included Officers Spicer and Speiser.  Defendants do not dispute
the existence of this letter.  The letter itself is not in the
record, McCrorey does not further characterize the letter, and
to the court's knowledge, it does not comment on the merits of
the arrest and prosecution of McCrorey.

McCrorey contends without support in the record that
the District Attorney's letter was the basis in part of his
motion seeking to vacate his sentence and guilty plea pursuant
to the Pennsylvania Post-Conviction Relief Act, 42 Pa. Cons.
Stat. § 9541, et seq. ("PCRA").  The motion was granted on
September 9, 2014.  On the same day, the court also granted the
motion of the Commonwealth for a nolle prosse of this charge.
While the motions themselves are not before the court, the

-8-

docket of McCrorey's proceedings before the First Judicial District of Pennsylvania confirmed that the charge against him under 35 Pa. Cons. Stat. § 780-113(a)(30) for possession of a controlled substance with intent to deliver was "nolle prossed."[4]

Beyond the actions described above, McCrorey does not identify conduct specifically undertaken by Officer Speiser. The record, as far as the court is aware, contains no discovery from defendants, from Velez, or from any prosecutor. Nor is there before the court the record of any bail or preliminary hearing, his guilty plea hearing and sentencing, or any post-conviction hearing.

III

McCrorey first alleges that pursuant to 42 U.S.C. § 1983 Officer Spicer engaged in malicious prosecution in violation of McCrorey's rights under the Fourth Amendment (Count I) and that Officer Spicer is also liable for malicious prosecution under state law (Count VI). To establish malicious prosecution under § 1983, plaintiff must prove that: (1) defendant initiated criminal proceedings against plaintiff; (2) the proceedings were initiated with malice, that is without

---

4. The docket also lists the following charges as nolle prossed: knowing possession of a controlled substance under 35 Pa. Cons. Stat. § 780-113(a)(16); receiving stolen property under 18 Pa. Cons. Stat. § 3925(a); and possession of drug paraphernalia under 35 Pa. Cons. Stat. § 780-113(a)(32).

probable cause and for a purpose other than bringing plaintiff to justice; and (3) the prosecution of plaintiff ended without a conviction.  See Thompson v. Clark, 596 U.S. 36, 44, 49 (2022). Under Pennsylvania law, the standard is similar: "plaintiff must prove that the defendant instituted proceedings without probable cause, with malice, and that the proceedings were terminated in favor of the plaintiff." Wainauskis v. Howard Johnson Co., 488 A.2d 1117, 1122 (Pa. Super. 1985) (quoting DeSalle v. Penn Cent. Transp. Co., 398 A.2d at 682-83 (Pa. Super. 1979)).

Officer Spicer first argues that he cannot be held liable for malicious prosecution of McCrorey because he did not initiate the criminal proceeding against him.  Prosecutors "rather than police officers are generally responsible for initiating criminal proceedings." Brockington v. City of Phila., 354 F. Supp. 2d 563, 569 (E.D. Pa. 2005).  McCrorey does not dispute that the District Attorney's Office initiated the criminal proceedings against him.  The name of the assistant district attorney who brought the case is not in the record. McCrorey, however, correctly maintains that Officer Spicer may be liable for malicious prosecution if he as a police officer "influenced or participated in the decision to institute criminal proceedings." Halsey v. Pfeiffer, 750 F.3d 273, 297 (3d Cir. 2014).

To establish malicious prosecution, McCrorey must also come forward with evidence that probable cause was lacking at the time the criminal proceeding was initiated. Probable cause exists if defendant both "honestly believed that the accused committed the crime for which the accused was prosecuted" and "reasonably believed that the accused was guilty of the crime charged." Gilbert v. Feld, 842 F. Supp. 803, 815 (E.D. Pa. 1993). The probable cause standard, of course, is lower than proof beyond a reasonable doubt. See Neczypor v. Jacobs, 169 A.2d 528, 530 (Pa. 1961); see also Dempsey v. Bucknell Univ., 834 F.3d 457, 467 (3d Cir. 2016). The question of probable cause in the context of a malicious prosecution action is one for the court, rather than the jury. Gilbert, 842 F. Supp. at 815. Possession with intent to deliver under 35 Pa. Cons. Stat. § 780-113(a)(30), with which McCrorey was charged, "can be inferred from the quantity of the drugs possessed along with the other surrounding circumstances." Commonwealth v. Little, 879 A.2d 293, 297 (Pa. Super. 2005) (citing Commonwealth v. Bess, 789 A.2d 757, 762 (Pa. Super. 2002)).

In Halsey, our Court of Appeals overturned the grant of summary judgment for defendant police officers in a malicious prosecution action because plaintiff had offered proof that the defendant officers had influenced the decision of the prosecuting attorney to pursue charges. 750 F.3d at 309. There

-11-

was evidence in the record that demonstrated the prosecuting attorney decided to draft the criminal complaint against Halsey based on what turned out to be his fabricated confession which the defendant officers had drafted.  Id. at 298.

In contrast, there is no proof before the court as to what influenced the District Attorney's Office to initiate proceedings against McCrorey.  In Halsey, the deposition of the prosecuting attorney was in evidence and was the subject of the Court of Appeals' detailed analysis.  See id. at 298-99.  Here, the testimony of the prosecuting assistant district attorney was not obtained.  Nor is a copy of a criminal complaint before the court.  McCrorey simply testified at his deposition that after his arrest he attended a preliminary hearing at which bail was set.  There is nothing before the court to show what the prosecution presented at this hearing or on what the prosecution may have relied to establish probable cause.  It is mere speculation as to what role, if any, Officer Spicer or his report played in influencing the assistant district attorney.

McCrorey also fails to provide any proof showing that probable cause was lacking at the time he was charged.  While the court has no evidence as to what the prosecutor considered in making his or her decision to bring charges against him, McCrorey admitted at his deposition that when he was arrested in his vehicle with Velez, he had a large amount of cash in his

-12-

hands and drugs as well as filled and blank prescriptions for
pain medication in his vehicle.  Even if probable cause at the
time of his arrest were the relevant inquiry, there can be no
genuine dispute that probable cause for possession with intent
to deliver existed at that time.  Little, 879 A.2d at 297.

McCrorey contends that the December 3, 2012 letter
from the District Attorney to the Philadelphia Police
Commissioner was the basis, at least in part, for the granting
of his PCRA petition and the overturning of his conviction.  As
noted, there is no evidence in the record to support his
position.  The PCRA petition and the related proceedings have
not been produced.  Even if the letter played a role in his
release, it does not help McCrorey in this lawsuit.  As
described by McCrorey, the District Attorney simply notified the
Police Commissioner that his Office would no longer rely on the
testimony, accept charges, or approve the search warrants of
certain police officers, including defendants Spicer and
Speiser.  It says nothing in particular about McCrorey's case.
The letter as characterized contained no representations as to
the veracity of Officer Spicer's report, the issue of probable
cause, or any evidence on which the assistant district attorney
may have relied to initiate proceedings against McCrorey.  It
appears that the District Attorney, in sending the December 3,
2012 letter, was acting broadly and presumptively with respect

-13-

to future cases without delving into the specific facts of
McCrorey's or any other prior case.  While McCrorey did succeed
in moving to vacate his conviction, the letter, as far as the
court is aware, says nothing about whether probable cause
existed to initiate the criminal proceeding against him.

McCrorey has cited no evidence that Officer Spicer
influenced the assistant district attorney in bringing the
charges against him or that the assistant district attorney
lacked probable cause to initiate criminal proceedings.  In
addition, there is no proof of malice.  Accordingly, the motion
of Officer Spicer for summary judgment as to McCrorey's claim of
malicious prosecution under § 1983 and under Pennsylvania law
will be granted.

IV

McCrorey also argues that the City and defendant
Officer Speiser engaged in malicious prosecution of him in
violation of Pennsylvania law (Count VI).

State claims of malicious prosecution against local
agencies such as the City are barred by the Pennsylvania
Political Subdivision Tort Claims Act, 42 Pa. Cons. Stat.
§§ 8541, et seq.  See, e.g., Bell v. Twp. of Chester, Civ. A.
No. 20-2849, 2021 WL 322774, at *3 (E.D. Pa. 2021) (citing
Johnson v. Sch. Dist. of Phila., Civ. A. No. 06-4826, 2008 WL
3927381, at *10 (E.D. Pa. Aug. 21, 2008)).  For this reason, the

-14-

City's motion for summary judgment as to McCrorey's claim of malicious prosecution under Pennsylvania law against it will be granted.

As for Officer Speiser, McCrorey fails to proffer evidence that he participated in or influenced the decision to institute proceedings. Halsey, 750 F.3d at 297-98. Accordingly, the motion of Officer Speiser for summary judgment as to McCrorey's claim of malicious prosecution under Pennsylvania law against him will also be granted.

V

McCrorey next maintains that Officer Spicer fabricated evidence in violation of Fourteenth Amendment procedural due process right under § 1983 (Count III).

To prove that a defendant deprived plaintiff of his procedural due process right, plaintiff must establish evidence that he was deprived of an individual interest encompassed within the Fourteenth Amendment and that the procedures available to him did not provide due process. Mulholland v. Gov't Cnty. of Berks, 706 F.3d 227, 238 (3d Cir. 2013). When a person is convicted on the ground of fabricated evidence, he or she has been denied due process of law. Halsey, 750 F.3d at 289-90.

McCrorey, in order to defeat summary judgment, must come forward with evidence that "there is a reasonable

-15-

likelihood that, absent that fabricated evidence, [he] would not have been criminally charged." Black v. Montgomery Cnty., 835 F.3d 358, 371 (3d Cir. 2016).

> "[T]estimony that is incorrect or simply disputed should not be treated as fabricated merely because it turns out to have been wrong." [Halsey, 750 F.3d at 295.] There must be "persuasive evidence supporting a conclusion that the proponents of the evidence" are aware that evidence is incorrect or that the evidence is offered in bad faith. Id.

Black, 835 F.3d at 372. A "he said, she said" dispute does not constitute fabricated evidence under this standard. Boseman v. Upper Providence Twp., 680 F. App'x 68, 70 (3d Cir. 2017).

McCrorey never went to trial. He was represented by experienced counsel and pleaded guilty. He has admitted in his deposition that at the time of his arrest filled and blank prescriptions and some of the drugs found in his car were his. Additionally, he acknowledged he had a large amount of money in his hand when he was sitting there with Velez. The record is barren of any fabricated evidence of Officer Spicer or anyone else that was ever used in or influenced any criminal proceeding against him.

Again, the District Attorney's December 3, 2012 letter does nothing to suggest that Officer Spicer fabricated any evidence. The letter, as previously noted, does not discuss the specific facts of his case and instead talks in general about

-16-

the conduct of certain police officers and about future cases.
It would be mere speculation for a jury to find in favor of
McCrorey on this issue based on the District Attorney's letter.

Accordingly, McCrorey fails to come forward with any
evidence that Officer Spicer fabricated evidence in violation of
his Fourteenth Amendment procedural due process right.  Officer
Spicer's motion for summary judgment as to this claim will be
granted.

VI

McCrorey further asserts that Officers Spicer and
Speiser conspired with each other to violate McCrorey's
constitutional rights, specifically by maliciously prosecuting
him in violation of his Fourth Amendment rights (Count II) and
fabricating evidence to be used against him in violation of his
Fourteenth Amendment procedural due process right (Count IV).

A conspiracy claim under § 1983 "only arises when
there has been an actual deprivation of a right." Perano v.
Twp. of Tilden, 423 F. App'x 234, 239 (3d Cir. 2011).  McCrorey
has pointed to no evidence that he was deprived of any right.
For this reason, his claims of conspiracy against the individual
defendants cannot survive.  The motion of Officers Spicer and
Speiser for summary judgment as to McCrorey's claim of
conspiracy maliciously to prosecute him under § 1983 (Count II)

-17-

and as to his claim of conspiracy for fabrication of evidence
under § 1983 (Count IV) will be granted.

                              VII

       McCrorey's final claim alleges that the City is liable
to him under Monell v. Department of Social Services of New
York, 436 U.S. 658 (1978) and City of Canton v. Harris, 489 U.S.
378 (1989) (Count V).  The City cannot be held responsible for
such a claim under a theory of respondeat superior.  Monell, 436
U.S. at 692-93; Canton, 489 U.S. at 385.

       To establish this claim, plaintiff must prove: (1) an
underlying constitutional violation; (2) a policy or custom
attributable to the municipality; and (3) that the violation
suffered by plaintiff was caused by the aforementioned policy or
custom.  Monell, 436 U.S. at 694.  Where a custom is the source
of the constitutional violation, plaintiff must prove "that
policymakers were aware of similar unlawful conduct in the past,
but failed to take precautions against future violations, and
that this failure, at least in part, led to [his] injury."
Bielevicz v. Dubinon, 915 F.2d 845, 851 (3d Cir. 1990).

       A municipality may be held responsible under § 1983
not only for an unconstitutional policy or custom, but also for
its failure to train where the failure results in "deliberate
indifference to the rights of persons with whom the police come

                              -18-

into contact" and reflects a "deliberate" or "conscious" choice
by the municipality.  Canton, 489 U.S. at 388-89.

        The fatal flaw in plaintiff's claim against the City
is that he has tendered no evidence of an underlying
constitutional violation.  Even if he had, he has tendered no
evidence to support the City's liability as opposed to the
liability of any of its employees.

        In support of his claim, McCrorey relies on reports
and testimony of experts and the testimony of a fact witness in
other cases.  First, he attaches to his motion the report and
testimony of Ellen Green-Ceisler which she provided as an expert
witness for plaintiff in Randall v. City of Philadelphia, Civil
Action No. 04-3983 (E.D. Pa.).  Her report and testimony related
to improper practices and procedures of the Philadelphia Police
Department through 2003 – some eight years before the events in
this pending action.

        Next McCrorey cites the "preliminary report" of Dr. R.
Paul McCauley, a police expert, which he rendered on behalf of
plaintiff James McIntyre in McIntyre v. Liciardello, Civil
Action No. 13-2773 (E.D. Pa.).[5]  His preliminary report provided

---

5.   This case is one of a collection of "bellwether" cases
adjudicated before my colleague the Honorable Paul S. Diamond.
The lead case, McGill v. City of Philadelphia, Civil Action No.
12-5690 (E.D. Pa.) was filed on October 4, 2012 and, like its
related cases, concerns the conduct of several Narcotics Field
Unit officers in the arrest and prosecution of citizens.

an analysis of the unconstitutional policing practices during
McIntyre's arrest on June 23, 2011.  Dr. McCauley did not opine
that these processes were continuing beyond the date of
McIntyre's arrest or that these constitutional lapses existed on
October 12, 2011, over six months later when McCrorey was
arrested.

Finally, in support of his claim against the City,
McCrorey relies on the deposition of Jeffrey Walker, a Narcotics
Field Unit officer who pleaded guilty to robbery and theft in
2013.  The deposition of Jeffrey Walker was taken on September
15, 2016 in McIntyre and Torain.  In his deposition, Walker
testified as to his involvement in the arrest of plaintiff
Kareem Torain which occurred on January 4, 2001.  He also
recounted that he was arrested in 2013 because he "help[ed] a
drug dealer rob another drug dealer" through a false affidavit
of probable cause, then planted drugs on an individual so that
he could enter that person's home to rob him.  He stated that he
had stolen from suspects on "numerous" occasions, that "it's
custom to do it," and that he regularly stole from suspects
with, among others, Officers Spicer and Speiser since becoming a
police officer in the Narcotics Field Unit in 1999 through his
arrest in 2013.  Walker was not involved in McCrorey's arrest
and prosecution, his deposition does not discuss it, and he was
not deposed in this matter.

-20-

The court in deciding a motion for summary judgment
may only consider evidence that is admissible under the Federal
Rules of Evidence.  See Fed. R. Evid. 101, 1101.  Evidence, of
course, that is not relevant is not admissible.  Fed. R. Evid.
402.  In addition, hearsay which does not fit within any
exception is likewise inadmissible.  See Fed. R. Evid. 802.  An
unsworn expert report or statement of an expert is inadmissible
hearsay, as they are out-of-court statements offered to prove
the truth of the matters asserted.  See Fed. R. Evid. 801(c).

The sworn testimony or sworn report of an expert or
the sworn testimony of a fact witness used in a prior unrelated
trial or proceeding likewise cannot be considered in a
subsequent proceeding unless the witness is unavailable and the
testimony is offered against a party "who had . . . an
opportunity and similar motive to develop it by direct, cross-,
or redirect examination."  See Fed. R. Evid. 804(b)(1).

Here, the report and testimony of Ellen Green-Ceisler
involved events that took place some eight years before the
events in this case.  Such evidence is inadmissible as totally
irrelevant, regardless of any other grounds for objection.  See
Fed. R. Evid. 402.

The proffered sworn report of Dr. R. Paul McCauley and
the testimony of Officer Jeffrey Walker in prior cases are also
inadmissible as McCrorey has offered no proof that either

-21-

witness is unavailable to testify in this action.  See Fed. R. Evid. 804(b)(1); see also Kirk v. Raymark Indus., Inc., 61 F.3d 147, 164-65 (3d Cir. 1995).  Without regard to any other objections that may apply, this impediment suffices to prevent the court from considering this evidence.

McCrorey has come forward with no admissible evidence in support of his claim that the City caused him harm as a result of unconstitutional polices or customs or that the City was deliberately indifferent in the training of its police officers.  Accordingly, the City's motion for summary judgment will be granted.